37 N.J. Super. 42 (1955)
116 A.2d 800
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NEW YORK CENTRAL RAILROAD COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 7, 1955.
Decided September 21, 1955.
*44 Mr. Joseph A. Davis argued the cause for defendant-appellant (Messrs. O'Mara, Schumann, Davis & Lynch, attorneys).
Mr. William Arnold argued the cause for plaintiff-respondent (Messrs. Guy W. Calissi and Joseph M. Lynch, attorneys).
Before Judges GOLDMANN, FREUND and CONFORD.
*45 The opinion of the court was delivered by CONFORD, J.A.D.
Defendant was convicted before the municipal magistrate of the Borough of Dumont, and again, on appeal by hearing de novo in the Bergen County Court, of violation of a provision of a municipal ordinance to the effect that:
"Whatever loud and unnecessary noise which disturbs the public peace, * * * between the hours of Eleven o'clock P.M. and Seven o'clock A.M. is hereby declared a nuisance and is prohibited."
By stipulation the County Court heard the matter on the transcript of the hearing before the magistrate. There was testimony by a number of witnesses that a small generator plant and the Diesel engines of locomotives stationed on tracks in the defendant's yards near Bedford Road in the Fleetwood section of the borough had, during the specified hours on certain dates, emitted sounds and noises variously described as "hum of loud motor," "constant whine and hum, * * * very hard on the ear drums," "very loud noise," "similar to a turret lathe, loud enough to disturb sleep in the house," "this noise could be very annoying and aggravating upon persons resting and trying to get to sleep," "pulsating sort of noise like a pump * * * enough to keep one from losing sleep" (sic). Most of the witnesses were neighborhood residents.
One of the witnesses testified that at one time the locomotives were stationed some distance north of the point at which they were currently causing annoyance but were moved to the latter location in 1946, producing complaints of unnecessary noise. In response to such complaints, it was stated, the railroad "at various times" dispatched the trains "back to their original location several hundred yards north of their present location." This witness expressed the opinion that the existing noise was "unnecessary" because the railroad had "sufficient trackage" in the northerly area of the yard to keep the locomotives where they would not disturb the residents of the Fleetwood section, as had been done in the past. There was also some suggestion in the proofs of the State *46 that the generator had been installed to lessen locomotive engine noise but had failed appreciably to accomplish the object and had, indeed, itself produced offensive and disturbing noises. The defendant produced no proofs but moved for judgment of acquittal on the ground of insufficiency of the proofs to establish that such noise as existed was unnecessary. Before the County Court, a motion for acquittal was based upon the unreasonableness of the ordinance. Both motions were denied.
On the present appeal defendant confines its argument to two points: (a) the ordinance offends due process requirements in that the specification of the prohibited conduct, "loud and unnecessary noise," is too vague and indefinite to apprise the defendant of the standard it is called upon to observe; (b) failure of the State to establish that the noise is "unnecessary." We address ourselves to these contentions in the order stated.

I.
We are here dealing with a penal enactment and a prosecution for its violation is "essentially criminal in nature." State v. Yaccarino, 3 N.J. 291, 295 (1949); cf. Board of Health, Weehawken Township v. New York Central R. Co., 10 N.J. 294 (1952). Defendant therefore properly asks the court to appraise the language of this ordinance for sufficiency in respect to definiteness. There is little difficulty in recognizing the general principle of constitutional and criminal law asserted. "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); Lanzetta v. State of New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 83 L.Ed. 888 (1939). The test is "whether the text of the ordinance adequately informs persons of the thing they are forbidden by the ordinance to do." State v. C.B.S. Enterprises, Inc., 24 N.J. Super. 512, 515 (App. Div. 1953). *47 The application of the rule, however, is frequently attended by differing judicial concepts as to the capacity of given legislative language to communicate to the ordinary mind with clarity a concept, injunction or command. Contrast the opposing reactions to the sufficiency of the words, "gang" and "gangster," of the New Jersey courts and of the United States Supreme Court in State v. Gaynor, 119 N.J.L. 582, 586 (E. & A. 1938) and Lanzetta v. State of New Jersey, supra; or, closer to one of the problems here presented, to the phrase, "`to employ * * * any person or persons in excess of the number of employees needed by such licensee to perform actual services,'" of the majority and minority of the court in United States v. Petrillo, 332 U.S. 1, 7, 16, 67 S.Ct. 1538, 1546, 91 L.Ed. 1877 (1947).
Defendant indicts the term "loud" as "very relative, depending not only upon time and place but upon circumstances as well." The suggestion is that a concept so variable is defective. The elasticity of the word "unnecessary" is similarly made a point of attack. For purposes of the present inquiry, however, the import of the ordinance should be examined in the context of the entirety of the language, "loud and unnecessary noise which disturbs the public peace." The phrase merits defense in its collective connotation if the latter contributes to its intelligibility. Noscitur a sociis. Cf. Ford Motor Co. v. New Jersey Department of Labor and Industry, 5 N.J. 494, 502 (1950). The concept of disturbance of the peace is a familiar one in the regulatory field, 6 McQuillin, Municipal Corporations (3rd ed. 1949), § 24.102, pp. 635, 636; R.S. 40:48-1 (6); and generally see Black's Law Dictionary (4th ed. 1951), p. 563; 11 C.J.S., Breach of the Peace, § 4, p. 819. It thus aids in settlement of meaning. In adjudging the sufficiency of penal language in the area of preservation of the peace, it is necessary to give consideration to the latitude of the field encompassed, the very aspect of relativity stressed by defendant, and, consequently, to the impracticability of rigid legislative criteria. Mayor, etc., of Town of Jonesboro v. Kincheloe, 148 Tenn. 688, 257 S.W. 418, 419 (Sup. Ct. 1923). Cf. Boyce Motor Lines, Inc. v. *48 United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952). Where the legislative regulatory object is appropriate and the conduct intended to be prohibited is not fairly susceptible of definition in other than general language, there is no constitutional impediment to its use. United States v. Petrillo, supra (332 U.S., at page 7, 67 S.Ct. 1538). That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls, is not a sufficient reason to hold the language too ambiguous to define a penal offense. See Robinson v. United States, 324 U.S. 282, 285, 65 S.Ct. 666, 89 L.Ed. 944 (1945). No more than a reasonable degree of certainty can be demanded. Boyce Motor Lines, Inc. v. United States, supra.
An a fortiori situation would seem to have been presented in Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949). That case involved, inter alia, the sufficiency in the sense presently relevant of the words, "loud and raucous," used in a Trenton ordinance regulating the use of sound trucks. The court disposed of the point as follows (336 U.S., at page 79, 69 S.Ct., at page 449): "While these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." We think the language of the ordinance sub judice is even more familiar in general parlance than that held adequate in the Kovacs case.
It has been held that language in an ordinance prohibiting an activity tantamount to a common law nuisance may be defended for adequacy of definition of the offense on the basis of the common law construction and application of the language in the definition of such a nuisance. City of Chicago v. Reuter Bros. Iron Works, Inc., 398 Ill. 202, 75 N.E.2d 355, 358, 173 A.L.R. 266 (Sup. Ct. 1947). In that case it was held that a zoning ordinance prohibiting the use of premises for fabricating metals in such manner as would emit noises of a "`disagreeable or annoying nature'" was not unconstitutional as not being sufficiently specific, since the words "disagreeable" and "annoying" have an *49 established meaning at common law in the definition of a noise nuisance. This approach to the problem seems to us unexceptionable. As applied to the present case, it suggests investigation of the extent to which the loudness or necessity of noises or their capacity to disturb the peace has been a matter of exposition or application in cognate fields of law.
We have already noted the familiarity in the law of the phrase "disturbing the peace." As to loudness, it is held that to be enjoinable as a nuisance noises must be "loud enough to appreciably disturb complainants' rest." Gilbough v. West Side Amusement Company, 64 N.J. Eq. 27, 30 (Ch. 1902); and, as relevant to a prohibition operative, as here, only at night, see Seligman v. Victor Talking Machine Co., 71 N.J. Eq. 697, 700 (Ch. 1906), affirmed 72 N.J. Eq. 946 (E. & A. 1907); Abend v. Royal Laundry Service, Inc., 122 N.J. Eq. 77 (E. & A. 1937); Friedman v. Keil, 113 N.J. Eq. 37, 39, 40 (E. & A. 1933). As to what may be regarded as "unnecessary" noise, the cases again afford judicial expressions in aid of interpretation. In Benton v. Kernan, 130 N.J. Eq. 193, 198 (E. & A. 1941), there was approved the asseveration by another state court that noise is an actionable nuisance "only when it passes the limits of reasonable adjustment to the conditions of the locality and of the needs of the maker to the needs of the listener"; cf. Damadio v. Levinsohn, 111 N.J. Eq. 84, 88 (Ch. 1932).
Defendant relies upon Baum v. Cooper, 131 N.J.L. 574 (Sup. Ct. 1944), but we do not think that case is applicable in the present inquiry. It was there held that in the light of the proofs adduced by the defendant manufacturer there was no showing of violation of an ordinance which, as interpreted by the court, prohibited "loud, unnecessary, improper or offensive" noises. No contention was there made that the prohibition, so construed, was unconstitutionally indefinite.
It is thus fair to conclude that the prohibition of the present ordinance is couched in language which not only is of common use and understanding but has the benefit of illumination by judicial use and interpretation. It fairly apprised the public and the defendant of what it proscribed.

*50 II.
It is defendant's position that an essential element of the case against it is the establishment of the fact that the noise was unnecessary and that, there having been no proof thereof by the State, it was entitled to acquittal. We have referred to testimony on behalf of the State which purported to show the noise was unnecessary because of the availability of other locations for the locomotives, which, when used in the past, had relieved the situation complained of. Defendant contends this proof is inconsequential because educed from witnesses inexpert in railroad operation and therefore not competent to establish that it was not necessary to have this equipment at the location in question. We think, to borrow the idea expressed in the Benton case, supra, that resolution of the question as to whether these noises were unnecessary depends upon the answer to the question as to whether it can be said that they passed the point of reasonable adjustment to the conditions of the locality and of the needs of the railroad company to those of the neighbors who were subjected to the noises. This, in turn, calls for determination of the needs of the company in respect to the particular management or operational problem involved. The facts in this connection obviously lie within the peculiar knowledge of the company's officers and employees. In such a situation, even conceding that the burden of evidence as well as the burden of proof, in the sense of persuasion, remains with the State, "comparatively slight evidence on the part of the prosecution will be accepted" because of the readiness with which the defendant could supply the exculpatory evidence, if it exists. Williams, Criminal Law (1953) § 230 (2), pp. 714, 715. Were we to accept this view of the law here applicable we would be inclined to hold that the burden of evidence was met by the State, and that, the defendant not having chosen to go forward with proof, a judgment of conviction was not insupportable in the evidence.
We are satisfied, however, that this case falls within a well-established qualification of the general rule requiring *51 the prosecution in a criminal case to submit proof of each element of the offense. Where the charge or indictment includes a negative averment, the truth or falsity of which lies peculiarly within the knowledge of the defendant, the burden of evidence, or of going forward with proof on that issue, as distinguished from the burden of proof, rests with the defendant. State v. Rabatin, 25 N.J. Super. 24, 31 (App. Div. 1953), certification denied 13 N.J. 361 (1953); cf. Plainfield v. Watson, 57 N.J.L. 525 (Sup. Ct. 1895); 31 C.J.S., Evidence, § 113, pp. 721, 722; 22 C.J.S., Criminal Law, § 571, pp. 885, 886; 20 Am. Jur., Evidence, § 151, p. 155; cf. Wharton, Evidence in Criminal Cases (11th ed. 1935), § 196, pp. 211-13, § 201, pp. 222, 223; McCormick, Law of Evidence (1954), § 318, p. 675. "This consideration, after all, merely takes its place among other considerations of fairness and experience * * * to be kept in mind in apportioning the burden of proof in a specific case." 9 Wigmore on Evidence (3rd ed. 1940), § 2486, p. 275.
In effect, the ordinance couches this element of the offense in a negative averment, i.e., that the noise was not necessary. The facts as to defendant's need, if it existed, to maintain the apparatus at the particular location where it caused neighboring residents loss of sleep was, as noted above, within its own peculiar if not exclusive knowledge. It chose not to give any evidence on the matter. The State was consequently not required to adduce evidence on the point at peril of suffering judgment of acquittal. In Baum v. Cooper, supra, cited by defendant, the defendant apparently gave proof of its needs and circumstances. The holding that the evidence there did not support the conviction is of no pertinence here. Under the circumstances, we deem the conviction sufficiently supported in the record before us.
Judgment affirmed.