501 P.2d 413

**STATE of Arizona, Appellee,**

v.

**Robert W. COLE, Appellant.**

**No. 1 CA–CR 472.**

Court of Appeals of Arizona,
Division 1,
Department B.

Sept. 26, 1972.

Rehearing Denied Oct. 20, 1972.

Review Denied Nov. 28, 1972.

Richmond, Ajamie, Fay & Warner, by Bruce F. Demaree, Phoenix, for appellant.

Joe R. Purcell, City Atty., City of Phoenix, by Alan S. Max, Asst. City Atty., Phoenix, for appellee.

JACOBSON, Judge.

This appeal questions the constitutionality of the City of Phoenix Ordinance dealing with barking or howling dogs.

The defendant, Robert W. Cole, was charged in the Magistrate's Court of the City of Phoenix, with violation of Article VIII, Section 2 of the Code of the City of Phoenix. Upon his conviction and fine of $50 the defendant appealed to the Superior Court of Maricopa County, which affirmed the conviction. The defendant appeals to this court pursuant to the provisions of A.R.S. § 22–375, questioning the constitutionality of the ordinance under which the municipal fine was imposed.

The defendant has raised two questions by this appeal:

(1) Is § 8–2 of the City of Phoenix Code so ambiguous or vague that its enforcement deprives defendant of his property without due process of law in violation of both the United States and Arizona Constitutions?

(2) Does § 8–2, if constitutional, provide for only civil penalties rather than criminal sanctions?

Section 8–2 of the Code of the City of Phoenix provides:

"*Section 8–2. Barking or Howling Dogs.*

"No person shall keep a dog within the City limits which is in the *habit* of barking or howling or disturbing the peace and quiet of any person within the City." (1962) (Emphasis added.)

Under defendant's first argument, he contends that the use of the word "habit" in the foregoing ordinance as a standard is so vague that men of common intelligence must necessarily guess at its meaning and therefore the ordinance is unconstitutional.

There is no doubt that a statute or ordinance which creates a crime must be definite and subject to being understood by men of common intelligence. As was stated in Connally v. General Const. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1925) (quoted in State v. Menderson, 57 Ariz. 103, 111 P.2d 622 (1941)):

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." 269 U.S. at 391, 46 S.Ct. at 127.

Also *see* Huerta v. Flood, 103 Ariz. 608, 447 P.2d 866 (1968); State v. Miller, 100 Ariz. 288, 413 P.2d 757 (1966).

As indicated, the test to be applied in determining whether the statute or ordinance is unconstitutionally vague is whether "men of common intelligence" can readily understand its terms. Superimposed upon this test, however, is the admonition that courts, in determining the degree of certainty required by due process should take into consideration the legislative body's difficulty in expressing particular concepts. Barbone v. Superior Court, 11 Ariz.App. 152, 462 P.2d 845 (1969); State v. Scofield, 7 Ariz.App. 307, 438 P.2d 776 (1968). As has been aptly stated, "condemned to the use of words, we can never expect mathematical certainty from our language." Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 2300, 33 L.Ed.2d 222 (1972).

Applying this test and these admonitions to the ordinance in question, we

have no hesitancy in holding that the use of the word "habit" is not unconstitutionally vague as being beyond the comprehension and understanding of a person of common intelligence. "Habit" has been defined as "a settled tendency of behavior or normal manner of procedure: custom, practice; . . . a behavior pattern acquired by frequent repetition . . .." Webster's New International Dictionary 1017 (3rd ed. 1961). Given the obvious purpose of the ordinance, to preserve the peace and quiet of the city, we would be hard-pressed to find a word different from "habit" to express the prohibited conduct. We, therefore, hold that upon this ground the ordinance is not unconstitutionally vague.

While defendant's second contention is also couched in terms of unconstitutional vagueness, we believe that what defendant is arguing is that the ordinance by its terms is not a criminal ordinance. A crime is defined by A.R.S. § 13–101 (1967) as:

"A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, the punishment of death, imprisonment, fine, . . .."

As thus defined, a crime in Arizona consists of two parts: the "thou shalt not" language and the punishment language. It is the latter element which the defendant argues is missing from § 8–2 of the Phoenix Code and therefore does not state a crime.

We note however, that § 8–18 of the Phoenix City Code, entitled "Penalty", provides:

"(b) Any owner or other person who fails to comply with any of the . . . requirements of this Article or who violates any of its provisions shall be guilty of a misdemeanor."

Section 1–5 of the same Code provides:

"Whenever in this Code or in any ordinance of the City any act is . . . declared . . . a misdemeanor . . . where no specific penalty is provided therefor, the violation of any such provisions of this Code or any ordinance shall be punished by a fine not exceeding Three Hundred Dollars or imprisonment for a term not exceeding six months, or both such fine and imprisonment . . .."

Our concern then, is whether the penalty provisions of §§ 8–18 and 1–5 of the Phoenix Code are "annexed" to the definition, description, and denouncement language of § 8–2 as required by A.R.S. § 13–101.

Amazingly, in the 71 years A.R.S. § 13–101 has been in our criminal code, the question of when a punishment is "annexed" has not been passed on by the Arizona courts. However, California, from which A.R.S. § 13–101 was derived, has passed on this subject. In the case of In Matter of Application of Ellsworth, 165 Cal. 677, 133 P. 272 (1913), in dealing with a liquor licensing ordinance which had no punishment provision annexed, the court stated:

"It would be competent . . . for the [legislative body] to make general provision whereby the violation of the terms of any of its ordinances should be declared a misdemeanor."

█ This is what was done by the City of Phoenix. While the better practice may well be to set forth the punitive language of a criminal statute immediately following the denouncement language, we hold that §§ 8–18(b) and 1–5 of the Phoenix City Code are sufficiently "annexed" to § 8–2 to state a crime under A.R.S. § 13–101.

For the foregoing reasons, the judgment of the superior court is affirmed.

HAIRE, C. J., Division 1, and EUBANK, J., concur.